## 55772. RANDY FORD, INC. et al. v. MARTIN.

BIRDSONG, Judge.

Randy Ford, Inc., its president, Mankovitch, and two of its employees, Morrison (the financial bookkeeper) and Pettit (the sales manager), were sued by Martin for malicious prosecution, invasion of privacy, libel and slander, and denial of her civil rights. The trial court denied summary judgment to Randy Ford et al., the appellants, but granted partial summary judgment to Ms. Martin on the issue of liability reserving trial on the issue of damages. Appellants' motion for interlocutory appeal was denied by this court but the case is now before us on the timely filing of an appeal to the partial grant of summary judgment as to liability.

The facts show that Ms. Martin suffered through an accident the loss of her automobile, which had an existing indebtedness upon it. Martin entered into negotiations with Randy Ford for the purchase of a used car. She told a salesman for the car dealer that she expected a $1,400-$1,500 settlement from the insurance loss on her old auto. She expected an additional $1,200-$1,400 from her father and had recently received a $400 alimony check from her ex-husband. In order to have Randy Ford hold the car she wished to purchase, Ms. Martin gave the salesman a $25 check and a promise to pay the additional $2,585 of the $2,610 purchase price within five days. She asked the salesman to hold her $25 check from a Monday until Friday. The insurance payment did not materialize as quickly as anticipated; therefore, Ms. Martin went back to Randy Ford the following Monday and gave the check for $2,585, with instructions that both the $25 and the $2,585 check be held until that next Friday. This arrangement was approved by the sales manager Pettit. On the designated Friday, the bookkeeper, Morrison, put the checks into normal banking channels for encashment. Both checks were returned for insufficient funds. Evidence offered by Ms. Martin showed that the insurance proceeds were paid directly to the holder of the lien on her old automobile instead of to her. Ms. Martin's father died during the intervening weekend between the giving of the $25 and $2,585 checks and no money was

forthcoming from his estate. The $400 check from her ex-husband "bounced." While Ms. Martin offered evidence that she made all this information known to a salesman at Randy Ford, the responsible officials of Randy Ford, the sales manager Pettit, the bookkeeper Morrison and the president Mankovitch all testified by deposition that the only information known to them was that Ms. Martin presented two checks, took possession of the car, and that subsequently, the checks were returned because of insufficient funds. Repeated efforts to have Ms. Martin redeem the checks proved fruitless and ultimately the bookkeeper Morrison was directed to take out a warrant against Ms. Martin for the issuance of the two "bad" checks.

At a hearing on the warrant the trial court determined that the holding of the two checks for five days by Randy Ford converted a cash sale into a credit sale. For that reason the court dismissed the warrant considering the matter as one of a civil rather than a criminal nature. Following the dismissal of the warrant, Ms. Martin brought the present suit against Randy Ford, Inc. and its officers and employees. As indicated above, the trial court granted appellee's motion for summary judgment on the issue of liability. This appeal followed. *Held:*

1. Appellee Martin has moved to dismiss this appeal because appellants attempted to pursue an interlocutory appeal and a final appeal simultaneously. Appellants, however, unsuccessfully sought an interlocutory appeal and thereafter, within the proper time frame, filed a notice of appeal as to the adverse grant of summary judgment. This course of action is legally authorized inasmuch as the rules pertaining to each do not exclude such filings and each filing was made in accordance with the statutory mandate. The motion to dismiss is denied.

2. Winnowing out the chaff and refining this case to its real issue, we are faced with the question presented by Ms. Martin of whether Randy Ford, Inc. and its officers and employees, with knowledge that it had extended credit to Ms. Martin, harrassed her by telephone calls, a criminal warrant, pressure at her place of employment and similar tactics, in order to obtain its money or, as advocated by appellants, whether believing that it had

entered into a cash sale and that Ms. Martin had delivered two "bad" checks, appellant Randy Ford simply sought to protect its rights as any injured party has a right to do. As we view the status of the evidence in this case, the answer to these alternative questions is very much in doubt and factually disputed. The cardinal rule of the summary judgment procedure is that the court can neither resolve the facts nor reconcile the issues, but only look to ascertain if there is an issue. *Bagley v. Firestone Tire &c. Co.,* 104 Ga. App. 736, 739 (123 SE2d 179). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact and if the trial court is presented with a choice of inferences to be drawn from the facts, all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. United States v. Diebold, Inc., 369 U. S. 654, 655 (82 SC 993, 8 LE2d 176); *Lewis v. C & S Nat. Bank,* 139 Ga. App. 855, 860 (229 SE2d 765). In view of the sharp conflicts of fact relating to the ultimate issue in this case, the trial court erred in granting partial summary judgment on the issue of liability.

*Judgment reversed. Bell, C. J., and Shulman, J., concur.*

ARGUED MAY 15, 1978 — DECIDED JUNE 20, 1978.

*Michael J. Gorby, Donald M. Fain,* for appellants.
*Hirsch Friedman,* for appellee.